IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN FLAKE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-19-3558 |
| WATER STREET TAVERN, INC., et al., | * | |
| | * | |
| Defendants. | | |
| | *** | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Patricia Arosemena's Motion for Summary Judgment (ECF No. 30). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motion.

### I.    BACKGROUND[1]

**A.    Factual Background**

Plaintiff Steven Flake worked for Defendant Water Street Tavern, Inc. ("Water Street") for about three months in 2018. (Decl. Steven Flake ["Flake Decl."] ¶ 1, ECF No. 34-1). Water Street is a Maryland corporation that owns the Water Street Tavern (the "Tavern"), a pub and grill in downtown Baltimore, and The Happy Grape, a small liquor store next door (collectively, the "businesses"). (Compl. ¶ 6, ECF No. 1). Defendant

---

[1] Because the evidence in the record is scant, the Court will draw on allegations from Flake's Complaint to create a more complete factual background.

Vincent Arosemena owns Water Street, and he and his wife, Defendant Patricia Arosemena,[2] work at the businesses most days. (Compl. ¶¶ 6, 14; Defs.' Answers Interrogs. ["Interrog. Answers"] at 7–8, ECF No. 30-3; see Flake Decl. ¶¶ 11–13). Flake brings claims against all three Defendants alleging that they did not pay him wages they owed under the Fair Labor Standards Act ("FLSA"), the Maryland Wage-Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL").

On April 11, 2018, a Water Street employee referenced only as "Tricia" hired Flake to work hourly for both businesses. (Steven Flake Dep. ["Flake Dep."] at 6:13–19, ECF No. 30-2; Compl. ¶¶ 23–24; Flake Decl. ¶¶ 2–4). Soon after, Flake met with Vincent Arosemena. (Interrog. Answers at 7–8). Although he did not mention the source of this information, Flake indicated that he "was told" that he would be paid $14.00 per hour when he worked at The Happy Grape and minimum wage, plus tips, when he worked as a server at the Tavern. (Flake Decl. ¶ 4).

Flake alleges that he worked over forty hours per week for Water Street (Flake Decl. ¶¶ 7–8). He explains that when he "was scheduled to close" the Tavern, he "would work approximately an extra hour after the closing of the bar/restaurant to clean and restock." (Id. ¶ 5). Similarly, when he closed The Happy Grape, he would work about half an hour after closing. (Id. ¶ 6). According to Flake, due to the extra time he spent working after closing, he worked over forty hours per week and he alleges he "was never paid overtime wages for [his] overtime hours." (Id. ¶¶ 7–8).

---

[2] The Court will occasionally refer to the Arosemenas by their first names for clarity.

2

Further, Flake states that when he worked at the Tavern, he was told that he "needed to tip out a percentage of [his] tips to kitchen staff." (Id. ¶ 9). He claims, though, that he was "never informed about anything involving a tip credit." (Id. ¶ 10). Additionally, Flake alleges that his paystubs show that he truly received less than the federal and state minimum wage for his work and that he is due compensation. (Compl. ¶ 44–45).

The instant Motion turns on the role that Patricia Arosemena played at the businesses. Flake maintains that Vincent and Patricia Arosemena worked at the businesses and were present "almost every day." (Flake Decl. ¶¶ 11–12). Vincent owns Water Street and "was involved" in creating Flake's schedules and issuing payroll. (Interrog. Answers at 7–8). As noted above, Vincent also met with Flake soon after Flake was hired and, on July 4, 2018, Vincent terminated Flake's employment. (Interrog. Answers at 8; Flake Decl. ¶ 1; Flake Dep. at 45:16–17).

Patricia, on the other hand, asserts that she has "no . . . ownership interest in Water Street." (Interrog. Answers at 8). Like Vincent, she was a regular presence at the businesses; indeed, Flake contends that she was there "almost every day from open until about 4:00 [p.m.]" (Flake Decl. ¶¶ 11–12). Flake alleges that when Vincent was not there, Patricia "would take over for him in managing the businesses," (Flake Decl. ¶ 13), and that she would provide him with direction and instructions:

> Patricia Arosemena also regularly directed my work, and would instruct me to serve certain tables or customers, direct me on which foods or drinks to bring out first, direct me on where to unload supply trucks or where to stock inventory for The Happy Grape, tell me about general duties and responsibilities, and otherwise generally supervise my work.

3

(Flake Decl. ¶ 14). Patricia also would tell him to "wear a mask," and instructed him on how to organize the stock and open the businesses. (Flake Dep. at 58:6–9). At The Happy Grape, she would similarly offer organizational instructions:

> [Patricia would] [d]irect[] where things were put, whether it be on the display or on the shelf. She would be conversing with people that came in for the liquor distributor, the beer distributor, people who came in with shipments of food. In the Happy Grape, she also was generally the one who organized things and directed where stuff would go in the downstairs, which is where all the excess stuff sitting on the shelves would go.

(Flake Dep. at 57:6–15).

Flake also observed Patricia "regularly speaking with and conducting business with various liquor representatives." (Flake Decl. ¶ 15). On one occasion, Flake saw her "end a business relationship with a liquor representative because she did not like the way the liquor representative spoke to her." (Flake Decl. ¶ 15). Patricia never discussed Flake's compensation with him or disciplined him. (Flake Dep. at 52:9–15).

**B.     Procedural History**

On December 13, 2019, Flake filed suit against Water Street, Vincent Arosemena, and Patricia Arosemena, alleging that he is due additional compensation arising from his employment with Water Street under the FLSA (Count I, Failure to Pay Minimum Wage, and Count II, Failure to Properly Pay Overtime), the MWHL (Count III, Failure to Pay Minimum Wage, and Count IV, Failure to Pay Overtime), and the MWPCL (Count V, Failure to Pay Earned Wages). (Compl. ¶¶ 52–67). Flake seeks the actual sums owed, liquidated damages under the FLSA, pre-judgment interest on all amounts owed under the

MWHL, three times the minimum wages and overtime owed under the statutory damage provisions of the MWHL and MWPCL, and attorneys' fees and costs under the FLSA, the MWHL, and MWPCL. (Compl. ¶ 22). Defendants filed an Answer on February 18, 2020, (ECF No. 9), and the Court issued a Scheduling Order on March 12, 2020, (ECF No. 13-1). On December 11, 2020, Defendant Patricia Arosemena filed a Motion for Summary Judgment (ECF No. 30). Flake filed his Opposition on January 15, 2021, (ECF No. 34), and Patricia Arosemena filed her Reply on January 29, 2021, (ECF No. 35).

## II.     DISCUSSION

### A.     Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

5

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Id. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

6

**B.** <u>Analysis</u>

    **1.** **Evidentiary Burden**

Patricia Arosemena asserts in her Motion that "the record is entirely devoid of any evidence" that she acted as an "employer" under the FLSA, the MWHL, or the MWPCL, and that the Court should enter judgment because she is not a proper defendant in Flake's wage claims. (Def. Patricia Arosemena's Mem. Supp. Mot. Summ. J. ["Mot."] at 2, ECF No. 30-1). Patricia points to Defendants' Answers to Interrogatories and Flake's deposition in support of her argument and plausibly demonstrates that no material facts remain in dispute between the parties. (<u>Id.</u>). Applying the summary judgment standard described above, Patricia met the threshold showing that there is no genuine dispute of material fact as to Flake's claims. Accordingly, the burden shifts to Flake to show "specific, material facts . . . that give rise to a genuine issue." <u>Wai Wan Tom v. Hosp. Ventures, LLC</u>, 980 F.3d 1027, 1042 (4th Cir. 2020) (citing <u>Celotex</u>, 477 U.S. at 323–24).

Flake argues that Patricia Arosemena impermissibly "attempts to shift the summary judgment burden from herself to Plaintiff by contending that Plaintiff can't prove that she is an employer within the meaning of the FLSA." (Pl.'s Opp'n Def. Patricia Arosemena's Mot. Summ. J. ["Opp'n"] at 5, ECF No. 34). Flake misunderstands the burden-shifting process that occurs in a summary judgment analysis. Once the moving party makes a showing that there are no genuine disputes of material fact, the burden shifts to the non-moving party not to affirmatively <u>prove</u> the underlying claims, but to make a showing that there exists a genuine dispute of material fact that would make summary judgment inappropriate. <u>See</u> <u>Wai Wan Tom</u>, 980 F.3d at 1041–42.

7

2.      **Patricia Arosemena's Status as an Employer (Counts I, II, III, IV, V)**

Flake first attempts to identify a genuine dispute of material fact by relying on an inference to an apparent informal policy that Patricia assumed all of Vincent's responsibilities when Vincent was away from the businesses. (Opp'n at 8). Flake asserts that it is undisputed that Vincent Arosemena is an employer under the FLSA. (Id.). During his deposition, Flake explained that "Patricia and Vincent were often [at the businesses] together," and that when Vincent was not feeling well, Patricia would be there "alone." (Flake Dep. at 57:3–5; see Opp'n at 8). He argues in his Opposition that because Vincent is an "employer within the meaning of the FLSA," there exists a "reasonable inference" that when Vincent was not present at the businesses, Patricia "operate[ed] in a similar capacity" and "even had the authority to take on his roll [sic] when he was not present." (Opp'n at 8). He asserts that Patricia "will dispute such [an] inference, but her protestations are irrelevant at the summary judgment stage." (Id.).

As set forth above, the Court must draw all reasonable inferences in favor of the non-moving party. The inference that Flake asks us to draw, however, is not reasonable. Flake fails to cite any record evidence supporting the inference that Patricia Arosemena took over Vincent's managerial responsibilities when he was out sick beyond the fact that she was physically present at times when he was not. Patricia's physical presence at the businesses, taken alone, however, fails to connote any degree of substantive managerial authority. Flake has not suggested, for example, that when Vincent was out sick, Patricia took over issuing payroll. Mere presence, without more, is insufficient to create a genuine

8

dispute of material fact that Patricia assumed managerial responsibilities in place of Vincent.

We turn next to whether Patricia Arosemena was an "employer" under the FLSA (Counts I and II), the MWHL (Counts III and IV), and the MWPCL (Count V), and therefore personally liable for any minimum wage or overtime obligations due to Flake. The purpose of the FLSA is "to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" Gionfriddo v. Jason Zink, LLC, 769 F.Supp.2d 880, 889 (D.Md. 2011) (quoting 29 U.S.C. § 202(a)). The FLSA, therefore, "generally requires employers to compensate employees for all of the hours worked, at a rate that is not less than the federal minimum wage rate." Id. An employer who violates the FLSA is liable to the employee for damages. Id.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." Gionfriddo, 769 F.Supp.3d at 890 (quoting 29 U.S.C. § 203(d)). The definition includes "those with managerial responsibilities and substantial control of the terms and conditions of the work of employees." Alvarez-Soto v. B. Frank Joy, LLC, 258 F.Supp.3d 615, 630 (D.Md. 2017) (emphasis added) (quoting Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016)). The MWHL is the state level version of the FLSA for Maryland and has an "almost identical definition[] of 'employer.'" McFeeley v. Jackson St. Ent., LLC, 47 F.Supp.3d 260, 267 n.6 (D.Md. 2014) (citing Watkins v. Brown, 173 F.Supp.2d 409, 416 (D.Md. 2001)). This Court has explained that "[t]he requirements under the MWHL are so

closely linked to the FLSA that '[a plaintiff's] claim under the MWHL stands or falls on the success of [his] claim under the FLSA.'" Id. (quoting Turner v. Hum. Genome Sci., Inc., 292 F.Supp.2d 738, 744 (D.Md. 2003)).

The MWPCL, in turn, defines "employer" more narrowly than the FLSA as "any person who employs an individual." Md. Code Ann., Lab. & Empl. § 3-501(b); see Alvarez-Soto, 258 F.Supp.3d at 631 ("This definition is 'narrower' than the definition of employer under the FLSA, in that it does not include individuals who act 'indirectly in the interest of an employer.'" (quoting Hall v. DIRECTV, LLC, 846 F.3d 757, 775 n.10 (4th Cir. 2017))). Accordingly, if an individual fails to qualify as an employer under the FLSA, he or she will not qualify under the MWHL, which tracks the analysis of the FLSA, or the MWPCL, which contains a narrower definition of "employer" than the FLSA and the MWHL. See McFeeley, 47 F.Supp.3d at 267 n.6; Alvarez-Soto, 258 F.Supp.3d at 631.

To determine whether a person is an "employer" under the FLSA, courts apply the "economic reality test"[3] set forth in Bonnette v. California Health & Welfare Agency, 704 F.2d 1465 (9th Cir. 1983), which considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, 704 F.2d at 1470; see Kerr, 824 F.3d at 83 (applying the Bonnette factors); McFeeley, 47 F.Supp.3d at 274 (same). "The four

---

[3] The "economic reality test" used to determine whether an individual is an "employer" under the FLSA is different than the "economic reality test" used to determine whether the individual is an "employee." McFeeley, 47 F.Supp.3d at 274 n.8.

10

enunciated factors of 'control' are not to be applied mechanistically, and their general purpose must be understood as ultimately assigning responsibility under the law." Campusano v. Lusitano Const. LLC, 56 A.3d 303, 310 (Md.Ct.Spec.App. 2012). Courts may consider other indicia of control as well, such as "an individual's operational control over significant aspects of the business and an individual's ownership interest in the business." Id. (citation omitted). No one factor is dispositive; courts must consider the totality of the circumstances. McFeeley, 47 F.Supp.3d at 274.

Patricia argues that there is no evidence to suggest that she acted in the role of an employer and, accordingly, Flake's claims against her must be dismissed. (Mot. at 5). She explains that Flake "conceded at his deposition that [she] played no role in his hiring or firing, nor was she involved in any discussions concerning his compensation." (Id.). Further, she asserts that she has no ownership interest in Water Street and "did not have a role in managing its operations during [Flake's] employment." (Id. at 6). Flake responds that the meaning of "employer" within the context of these statutes is broad and that Patricia Arosemena had control over his work. (Opp'n at 6–7). He argues further that even if Patricia did not exercise her powers as an employer, she had "authority similar, if not equivalent, to her husband who is indisputably an owner and employer of Plaintiff." (Id. at 9). Flake's argument fails.

As for the first factor, nothing in the record suggests that Patricia had the power to hire and fire employees. Flake was hired by a Water Street employee named "Tricia" and he was fired by Vincent Arosemena. (Flake Decl. ¶ 3; Interrog. Answers at 8). There is no evidence that Patricia hired or fired any other employees or otherwise disciplined

11

employees while Flake was working for Water Street. (Flake Dep. 52:12–15). Flake argues, however, that "[j]ust because Defendant [Patricia] Arosemena did not hire or fire Plaintiff herself, does not mean she did not have the authority to do so." (Opp'n at 7). Further, he contends that "[i]f the economic reality test relied on performance rather than authority, it would create a perverse incentive where well-behaved employees who never warranted discipline would have a harder time showing employer status." (Opp'n at 7 n.1).

Flake is correct that the first factor does not require that the employee be hired or fired by the purported employer directly; instead, it asks whether the alleged employer has the power to hire and fire employees generally. See Bonnette, 704 F.2d at 1470. Flake, however, has set forth no evidence that Patricia had the authority to take such action, let alone had the opportunity to do so, and the Court has identified no such evidence in the record. Additionally, this first factor is not dispositive, it is just one of several used in a totality-of-the-circumstances analysis meant to help courts assign responsibility under the law. Accordingly, there is no requirement that "well-behaved employees" go out of their way to be fired or otherwise disciplined in order to show that an individual is an employer under the FLSA.[4]

Next, we review whether Patricia "supervised and controlled employee work schedules or conditions of employment." See Bonnette, 704 F.2d at 1470. The record is

---

[4] Flake points to Patricia's decision to "end a business relationship with a liquor representative because she did not like the way the liquor representative spoke to her." (Flake Decl. ¶ 15). This element of the Bonnette factors, however, considers whether a defendant had the power to hire and fire employees, a distinct issue from whether the defendant could initiate or terminate non-employment business relationships.

12

clear that Vincent controlled Flake's work schedule, not Patricia. (Interrog. Answers at 8). Flake suggests, however, that Patricia controlled his conditions of employment. (Opp'n at 8). Campusano v. Lusitano Construction LLC is illuminating. In Campusano, the Maryland Court of Special Appeals reviewed whether a manager at a construction business was an "employer" within the context of the FLSA and the MWPCL. 56 A.3d at 310. The manager set the employee's work schedule, assigned tasks, managed supplies, and maintained work logs, but he did not have any direct financial interest in the business. Id. The Court held that the manager was not an "employer" within the meaning of the FLSA or MWPCL, stating that "these supervisory tasks [were] not sufficient to make him personally liable for [the employee's] wages, particularly where he had no ownership, control, or investment in the LLC that was [the employee's] formal employer." Id.

Here, when Flake was working at the Tavern, Patricia "instruct[ed]" him to serve "certain tables or customers" and provided guidance on "which foods or drinks to bring out first." (Flake Decl. ¶ 14). She would further "check on" his tables to see if they "needed anything or their orders were correct." (Flake Dep. at 58:1–3). She also told Flake "where to unload supply trucks or where to stock inventory" and would "tell [Flake] about [his] general duties and responsibilities." (Flake Decl. ¶ 14). While this does demonstrate some control over Flake's workplace activities, the extent of Patricia's control was modest, even when compared to those the Maryland Court of Special Appeals found insufficient in Campusano. We also note that Patricia does not have an ownership interest in Water Street. As a result, this factor weighs in favor of Patricia.

We next consider whether Patricia determined "the rate and method of payment." Vincent Arosemena oversaw issuing payroll and "communicated on [Defendant Water Street's] behalf with its payroll vendor, Paychex, regarding the preparation and issuance of paychecks" during Flake's employment. (Interrog. Answers at 7). Flake has introduced no contrary evidence to suggest that Patricia was involved in the method of payment. As for the determination of Flake's rate of pay, Flake indicated that he "was told [he] would be paid $14.00/hour when [he] worked at The Happy Grape, and that [he] would be paid minimum wage plus tips when [he] worked at the Water Street Tavern." (Flake Decl. ¶ 4). He did not identify, however, who advised him of his hourly rates. As such, there is no evidence that Patricia was involved in issuing payment or setting Flake's hourly rates. As a result, this factor weighs in Patricia's favor.

Finally, we look to whether Patricia "maintained employment records." Bonnette, 704 F.2d at 1470. Again, nothing in the record suggests that she did. Flake concedes "that there may be no record evidence that Defendant [Patricia] Arosemena was involved in the maintenance of employment records." (Opp'n at 7). Again, this factor weighs in Patricia's favor.

Here, considering the totality of the circumstances, Patricia Arosemena is not an "employer" under the FLSA, MWHL, or MWPCL: she lacked any ownership interest in the business, she did not demonstrate the authority to hire or fire employees, she was not involved in creating Flake's schedules, setting Flake's wages, or in issuing payroll, and she did not maintain any employment records. Her limited involvement in providing Flake with instruction and supervision while working at the businesses is insufficient as a matter of

14

law to suggest that she had "control" over Flake. See Campusano, 56 A.3d at 310–11; McFeeley, 47 F.Supp.3d at 373–76. Accordingly, Flake's claims must fail against Defendant Patricia Arosemena. The Court will enter judgment in her favor.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Patricia Arosemena's Motion for Summary Judgment (ECF No. 30). A separate Order follows.

Entered this 17th day of September, 2021.

/s/
George L. Russell, III
United States District Judge
